1   Thomas H. Allen, State Bar #11160
    Michael A. Jones, State Bar #27311
2   **ALLEN, SALA & BAYNE, PLC**
    1850 N. Central Ave., Suite 1150
3   Phoenix, Arizona 85004
    Ofc: (602) 256-6000
4   Fax: (602) 252-4712
    Email: tallen@asbazlaw.com
5          mjones@asbazlaw.com

6   Attorneys for Tinsley Hospitality Group,
    LLC, Edward R. Tinsley, III, Flying W.
7   Diamond Ranch, Inc., K-Bob's U.S.A., Inc.
    and K-Bob's Capital Resource Group, LTD

8

## UNITED STATES BANKRUPTCY COURT

9

## DISTRICT OF ARIZONA

10

| | |
|---|---|
| 11    In re: | Chapter 11 |
| 12    STAR BUFFET, INC., | Jointly Administered |
| 13        Debtor. | Case Nos. 2:11-bk-27518-GBN and 2:11-bk-27713-GBN |
| 14    In re: | |
| 15    SUMMIT FAMILY RESTAURANTS, INC., | **Adv. No. 2:12-ap-00087-GBN** |
| 16        Debtor. | |
| 17    FLYING W. DIAMOND RANCH, INC., TINSLEY HOSPITALITY GROUP, LLC, | |
| 18    and K-BOB'S U.S.A., INC., | **COMPLAINT** |
| 19        Plaintiffs, | |
| 20    vs. | |
| 21    STAR BUFFET, INC., SUMMIT FAMILY RESTAURANTS, INC., KB'S STAR | |
| 22    HOLDINGS, INC., and STAR TEXAS RESTAURANTS, INC. | |
| 23        Defendants. | |
| 24 | |

25        Flying W. Diamond Ranch, Inc., Tinsley Hospitality Group, LLC, and K-Bob's U.S.A.

26   (collectively "Plaintiffs"), allege as follows:

27   **I.    PARTIES**

28        1.    Plaintiff Flying W. Diamond Ranch, Inc. ("FWD") is a foreign for-profit

corporation with its principal office located in Capitan, New Mexico  88316.

2.     Plaintiff Tinsley Hospitality Group, LLC ("THG") is a foreign limited liability company with its principal office located in Santa Fe, New Mexico  87506.

3.     Plaintiff K-Bob's U.S.A., Inc. ("KBUSA") is a foreign corporation with its principal office located in Santa Fe, New Mexico.

4.     Defendant Summit Family Restaurants, Inc. ("Debtor Summit") is a domestic for-profit corporation, whose principal office is located at 1312 N. Scottsdale Road, Scottsdale, Arizona  85257.

5.     Defendant Star Buffet, Inc. ("Debtor Star") is a Delaware for-profit corporation, whose principal office is located at 1312 N. Scottsdale Road, Scottsdale, Arizona  85257.

6.     Defendant KB's Star Holdings, Inc., ("KB's Star Holdings") is a Delaware corporation, which is a wholly-owned subsidiary of Debtor Summit.

7.     Defendant Star Texas Restaurants, Inc. ("Star Texas") is a Texas corporation, which is a wholly-owned subsidiary of Debtor Star.

8.     Debtor Summit, Debtor Star, KB's Star Holdings, and Star Texas are collectively referred to herein as "Defendants".

II.     **VENUE AND JURISDICTION**

9.     Jurisdiction in this Court is founded upon 28 U.S.C. §§ 1334 and 157.  Debtor Star and Debtor Summit are debtors ("Debtors") in jointly administered bankruptcy cases currently pending before this Court.

10.     Jurisdiction in this Court is also proper under 28 U.S.C. § 1331, as Plaintiff pleads violations of 15 U.S.C. §§ 1114(1) and 1125(a).

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1409(a).

12.     This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b), and has been referred to this Court pursuant to 28 U.S.C. § 157(a).

/ / /

/ / /

/ / /

## III. FACTUAL BACKGROUND

### A. THE K-BOB'S STEAKHOUSE® LICENSING SYSTEM AND TRADEMARKS

13. THG and KBUSA have granted franchises for K-BOB'S STEAKHOUSE® restaurants in the United States for approximately 21 years. During that time, THG and KBUSA have spent considerable time and resources to develop a business system for the promotion, sale, and delivery of food products and services of a distinctive character under the K-BOB'S STEAKHOUSE® Marks and System (as defined below).

14. K-BOB'S STEAKHOUSE® franchisees are authorized to use confidential information, trade secrets, proprietary marks and distinctive forms, slogans, signs, symbols, and devices associated with the K-BOB'S STEAKHOUSE® System (as defined below). A complete list of the asserted trademarks, hereinafter referred to as the K-BOB'S STEAKHOUSE® Marks, is attached to this Complaint as **Exhibit "A"**.

15. THG is the current registered owner of the K-BOB'S STEAKHOUSE® Marks noted above.

16. In addition to receiving the right to use the K-BOB'S STEAKHOUSE® Marks, franchisees also gain access to the K-BOB'S STEAKHOUSE® franchise system that details an entire method of doing business ("System"). The System includes, among other things, the unique and distinguishing characteristics and methods for the operation of restaurants, including without limitation, exterior and interior construction designs, menu items and recipes, Salad Wagon designs and recipes, restaurant and kitchen layout, operating methods, services, advertising and promotional materials, marketing techniques, signs, and certain bookkeeping and accounting systems. The System also includes THG's secret, confidential and proprietary manuals ("Manuals"), and all other trade secrets, information, know-how, ideas, techniques, research methods, improvements and copyrighted materials, and the goodwill associated with them. The Manuals cover THG's operating policies, architectural and construction standards, store operations, food and service quality standards, marketing and advertising policies and standards, promotional programs, risk management, loss prevention, accounting, and information relating to other business matters.

17.    A central component of the System is the K-BOB'S STEAKHOUSE® Marks. K-BOB'S STEAKHOUSE® customers look for the K-BOB'S STEAKHOUSE® Marks and expect a certain level of service, food, and experience consistent with the System when entering a K-BOB'S STEAKHOUSE® branded restaurant. THG has invested substantial effort, including the expenditure of significant sums of money, to develop this goodwill and to cause customers to recognize the K-BOB'S STEAKHOUSE® name. As the former operators of K-BOB'S STEAKHOUSE® franchises, the Defendants profited from this goodwill.

## IV.    AGREEMENTS BETWEEN THE PARTIES

### A.    Lease Agreements

18.    FWD as lessor and Debtor Summit as lessee entered into three written leases for the period of January 31, 2006 to January 31, 2025 for the properties ("Leased Premises") located at: (i) 2200 Lubbock Highway, Lamesa, Texas 79331 ("Lamesa Location"), attached hereto as **Exhibit "B-1"**; (ii) 1912 North St. Mary's, Beeville, Texas 78102 ("Beeville Location"), attached hereto as **Exhibit "B-2"**; and (iii) 200 E. Estrella, Tucumcari, New Mexico 88401 ("Tucumcari Location"), attached hereto as **Exhibit "B-3"** (collectively the "Leases").

### B.    Defaults under the Leases

19.    In 2008 or early 2009, the Leases were "informally" or "orally" assigned from Debtor Summit to KB's Star Holdings and Star Texas.  See 341 Transcript of Debtor Star, November 1, 2011, at 11:17-13:17 attached hereto as **Exhibit "C"**; see e.g., Wheaton Dep. 60:3-62:17, Aug. 5, 2011 attached hereto as **Exhibit "D"**.

20.    According to FWD and KBUSA's books and records, FWD does not have a contractual relationship with Defendants KB's Star Holdings or Star Texas, despite KB's Star Holdings and Star Texas' contention that they are the real parties in interest under the Leases for the Tucumcari Location, Lamesa Location, and Beeville Location.

21.    Debtor Summit never informed FWD of any transfer of ownership, as required by the Leases.  See Exhibit "D".  Before it could assign or sublet any interest in the Leases or the Leased Premises to another entity, Debtor Summit was first required to obtain FWD's consent (which was never obtained) and complete various other procedural requirements (which

were never accomplished).  See Exhibits B-1 to B-3 at ¶ 31.

22.     Moreover, Debtor Summit failed to maintain and repair the Leased Premises as required by each of the Leases thereby causing extensive damage to the Leased Premises.

23.     In addition, Debtor Summit breached the Leases by failing to maintain insurance coverage on the Leased Premises.  In this regard, FWD incurred damages for repair of the roof at the Tucumcari Location caused by hail, which should have been covered by insurance.

24.     Debtor Summit also owes FWD for certain equipment and personal property that were either removed or must be replaced, and were contained in the Beeville Location when Debtor Summit indefinitely shut down.

25.     Debtor Summit operated the Leased Premises as a K-BOB'S STEAKHOUSE® restaurant pursuant to the License Agreements as described herein.  Debtor Summit breached the License Agreements, which resulted in their termination, as set forth in detail below.  By taking actions which resulted in termination of the License Agreements, Debtor Summit was required to cease operating restaurants under the K-BOB'S STEAKHOUSE® name. Accordingly, Debtor Summit was required to give six months' notice that it would use the Leased Premises for a restaurant other than a K-BOB'S STEAKHOUSE® brand restaurant. Debtor Summit has not provided such notice, thus further breaching the Leases.  See Exhibits "B-1" to "B-3" at ¶ 11.

26.     Beginning on May 6, 2008, FWD sent Debtor Summit a series of letters and Notices of Default for its defaults under the Leases.  See Correspondence, attached hereto as **Exhibit "E".**

27.     Despite the notice and ample opportunity to cure, Debtor Summit failed and refused to meet its obligations under the Leases.

28.     Debtor Summit has committed material breaches of the Leases, and accordingly, Debtor Summit has terminated the Leases.

29.     Debtor Summit has not surrendered the Leased Premises despite that the post-termination obligations set forth in the Leases contractually requires it to do so.  See Exhibits "B-1" to "B-3" at ¶ 31.

## C.    License Agreements

30.    On or about February 1, 2005, KBUSA as licensor and Debtor Summit as licensee entered into a license agreement related to the operations of three K-BOB'S STEAKHOUSE® restaurants located at: (i) the Lamesa Location; (ii) the Beeville Location; and (iii) the Tucumcari Location, attached hereto as **Exhibit "F-1"**.

31.    In February 2006, KBUSA as licensor and Debtor Summit as licensee entered into an additional license agreement related to the operation of a K-BOB'S STEAKHOUSE® restaurant located at 1800 Dumas Avenue, Dumas, Texas 79029 ("Dumas Location"), attached hereto as **Exhibit "F-2"**.

32.    Collectively the Lamesa Location, Beeville Location, Tucumcari Location, and Dumas Location are referred to herein as the "Licensed Locations" and the license agreements listed above relating to the Licensed Locations are referred to as the "License Agreements".

33.    The License Agreements list that the laws of the State of New Mexico shall govern the agreements between the parties.

34.    On December 15, 2007, Debtor Summit reaffirmed its obligations under the License Agreements and its agreement to pay the amounts owed pursuant to a settlement agreement resolving arbitration entitled K-Bob's USA, Inc. v. Summit Family Restaurant, Inc., Case Number 76 114 E 00246 06 JENF, which agreement was signed by Robert Wheaton as president of Debtor Summit ("Settlement Agreement"), attached hereto as **Exhibit "G"**.

35.    On or about December 23, 2008, KBUSA properly assigned its interests in the License Agreements to THG, providing notice of such assignment to Debtor Summit.  See Assignment of License Agreements attached hereto as **Exhibit "H"**; Notices of Assignment attached hereto as **Exhibit "I"**.

36.    Debtor Summit was timely notified of the assignment to THG and did not raise any objection to this assignment.  See id.

37.    As part of the consideration for each of the License Agreements, Debtor Summit promised to pay royalty fees and make certain payments toward advertising and marketing for each Licensed Location.  See Exhibits F-1 and F-2 at ¶ 4.1.

38.     In addition, THG provided Debtor Summit with access to its proprietary Manuals (with KB's Star Holdings and Star Texas apparently usurping such access without authorization). Debtor Summit also received a recommended business development process, ongoing marketing and promotional support, ongoing planning support for operations, and marketing and business planning. Indeed, Debtor Summit received all of the benefits of the System including, use of the K-BOB'S STEAKHOUSE® Marks, access to Debtor Summit's unique menu items, advertising materials, and approved supplier network.

**D.     THG's Efforts to Protect its Information**

39.     THG has invested substantial money, time, and effort developing the System; this System is extremely valuable to THG.

40.     To maintain the confidentiality of its trade secrets and maintain its competitive position, THG spends substantial time, effort, and money to develop and maintain the confidentiality of its trade secrets. At the inception of each franchise, THG requires each franchisee to sign an agreement in which the franchisee acknowledges: (i) the nature of THG's trade secret, proprietary, and confidential information; (ii) agrees not to disclose that information; and (iii) agrees not to compete with THG during the terms of the License Agreements.

41.     Section 7.2 of each License Agreement provides the following confidentiality provision:

> LICENSEE agrees to (a) keep the Manual on the premises of the Licensed Restaurant; (b) at all times operate the Licensed Restaurants in conformance with the Manual; (c) not copy, duplicate, record or otherwise reproduce any of the contents of the Manual; (d) treat the contents of the Manual as confidential; and (e) disclose the contents of the Manual only to those employees of LICENSEE who need to know the information contained within the Manual to perform their employment responsibilities.

**E.     Defaults under the License Agreements**

42.     In 2008 or early 2009, the License Agreements were "informally" or "orally" assigned from Debtor Summit to KB's Star Holdings and Star Texas. <u>See</u> Exhibit "E"; <u>see</u> <u>e.g.</u>, Wheaton Dep. 51:23-62:17, Aug. 5, 2011 attached hereto as **Exhibit "J"**.

1    43.    According to THG and KBUSA's books and records, THG does not have a

2    contractual relationship with Defendants KB's Star Holdings or Star Texas despite: (i) KB's

3    Star Holding's contention that it is the real party in interest under the License Agreements for

4    the Tucumcari Location, Lamesa Location, and Beeville Location; and (ii) Star Texas'

5    contention that it is the real party in interest for the Dumas Location.

6    44.    Debtor Summit never informed THG of any transfer of ownership, as required by

7    the License Agreements.  See Exhibit "J" at 54:4-59:23.  Before it could transfer any interest in

8    the Lease Agreements to another entity, Debtor Summit was first required to obtain THG's

9    consent (which was never obtained) and complete various other procedural requirements (which

10   were never accomplished).  See Exhibits "F-1" and "F-2" at § 15.

11   45.    The License Agreements contain provisions regarding termination:

12   TERMINATION

13   LICENSOR may terminate this Agreement before the expiration of the term for "good
14   cause."

15   1.   ["]Good cause" shall include the failure of LICENSEE to comply with any
     provision (including specifically the timely payment of any monies owed to
16   LICENSOR) of this Agreement or any other agreement between the parties hereto
     and . . . to fail to cure the default after being given written notice of the default
17   and a reasonable opportunity to cure the default, which shall not be more than
     thirty (30) days.

18

19   See Exhibits F-1 and F-2 at ¶ 12.

20   46.    Debtor Summit has also breached the License Agreements by failing to pay

21   royalty fees, and advertising and marketing payments for the Licensed Locations.

22   47.    Beginning on March 17, 2008, THG and KBUSA sent Debtor Summit a series of

23   letters and Notices of Default for failing to timely provide royalty and advertising fees, and

24   Debtor Summit stopped all payments under the License Agreements in December 2009.  See

25   Correspondence, attached hereto as **Exhibit "K"**.

26   48.    Despite the notice and ample opportunity to cure, Debtor Summit failed and

27   refused to meet its obligations under the License Agreements.

28   / / /

49.     In fact, Debtor Summit informed THG that Debtor Summit's financial problems were the cause for its refusal to pay the required royalty and advertising fees.  <u>See</u> Correspondence dated December 22, 2009 and March 24, 2010 attached hereto as **Exhibit "L"**.

50.     On November 19, 2010, THG provided Debtor Summit with written notice that the License Agreements had been terminated due to Debtor Summit's breach of the License Agreements.  <u>See</u> Correspondence dated November 19, 2010, attached hereto as **Exhibit "M"**.

51.     Debtor Summit refused to immediately cease operations of the Licensed Locations.

**F.     <u>State Court Litigation and Bankruptcy Proceeding</u>**

52.     On September 2, 2010, the Plaintiffs filed their Complaint against the Defendants for, among other things, damages to Plaintiffs resulting from the Defendants' breaches under the Leases and License Agreements.  In subsequent pleadings, the Plaintiffs sought that Debtor Summit, among other things, cease operations of the K-BOB'S STEAKHOUSE® restaurants. The State Court Litigation is designated as <u>Flying W Diamond Ranch, Inc. et al. v. Summit Family Restaurants, Inc. d/b/a K-Bob's Steakhouse, et al.</u>, Cause No. 10-09-18441 in the 106th District Court of Dawson County, Texas.

53.     Thereafter, the Defendants filed their Answer and Counterclaims against the Plaintiffs.

54.     On September 28, 2011, after Plaintiffs had completed discovery and only days before trial in the State Court Litigation, the Debtors filed their voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code.

55.     On September 30, 2011, the Debtors filed Notices of Filing Bankruptcy in the State Court Litigation.  A true and correct copy of these Notices is attached hereto as **Exhibit "N"**.

56.     KB's Star Holdings and Star Texas are wholly owned subsidiaries of Debtor Star.

57.     Debtor Summit listed that the Leased Premises were "informally sublease[d]" to KB's Star Holdings.  <u>See</u> KB's Star holding's bankruptcy schedules at Schedule G.

58. Robert Wheaton is the President for Debtor Summit and Debtor Star.

59. As Wheaton has testified, most recently at the Debtors' recent 341 meetings, the License Agreements with the Movants were "informally" or "orally" assigned from Debtor Summit to KB's Star Holdings and Star Texas. <u>See</u> Exhibit "C", at 11:17-13:17; <u>see</u> <u>e.g.</u>, Exhibit "J".

60. Wheaton has also testified that the Leases with the Movants were assigned from Debtor Summit to KB's Star Holdings. <u>Id.</u>

61. The Debtors did not provide Plaintiffs with the required notice of the assignments of the Leases and License Agreements.

62. The Debtors do not receive any income from operations of the Licensed Locations.

63. Debtor Summit is a primarily inactive entity and does not receive any revenue from Star Texas or KB's Star Holdings. <u>See</u> 341 Transcript of Debtor Summit, November 1, 2011, at 3:7-9; 4:26-28, attached hereto as **Exhibit "O"**.

64. Debtor Star does not generate any income and does not receive income from its subsidiaries, including Star Texas or KB's Star Holdings. <u>See</u> Exhibit "C", 6:15-19 and 10:3-9.

65. In fact, Debtor Star has not received any income from: (i) Star Texas since at least 2008 or early 2009; and (ii) KB's Star Holdings since at least 2006.

**G. Debtor Summit's Breaches and Unauthorized Use of the K-BOB'S STEAKHOUSE® Marks**

66. Despite receiving the various benefits of the System, Debtor Summit has failed to comply with its contractual obligations under the License Agreements and Leases, as well as its obligations under applicable law.

67. K-BOB'S STEAKHOUSE® Marks and trade dress have not been removed by Debtor Summit from the premises of the Licensed Locations despite that the post-termination obligations set forth in the License Agreements contractually requires it to do so. <u>See</u> Exhibits F-1 and F-2 at ¶ 13.

/ / /

68.     Debtor Summit has failed to remove the K-BOB'S STEAKHOUSE® Marks from the exterior of the Licensed Locations or ceased using the K-BOB'S STEAKHOUSE® Marks in conjunction with goods and services sold by Debtor Summit at the Licensed Locations.

69.     On December 9, 2011, Plaintiffs informed Defendants through counsel that they were aware that Defendants had refused to de-identify, that Defendants were continuing to use the K-BOB'S STEAKHOUSE® Marks, and that Defendants were not honoring their post-termination obligations to Plaintiffs.  See correspondence attached hereto as **Exhibit "P"**. Plaintiffs stated that if Defendants did not de-identify, cease use of the K-BOB'S STEAKHOUSE® Marks, and that if Debtor Summit did not comply with its post-termination obligations by December 9, 2011, Plaintiffs would institute this adversary proceeding.  Id.

70.     Defendants have failed to return the materials bearing the K-BOB'S STEAKHOUSE® Marks, the Manuals, and all other materials that they are required to relinquish to THG following the termination of the License Agreement.  See Exhibits F-1 and F-2 at ¶ 13.

71.     Debtor Summit continues to operate the Licensed Locations in the same locations, under the K-BOB'S STEAKHOUSE® name, using the K-BOB'S STEAKHOUSE® Marks, System, Manuals, and other confidential and proprietary information without having satisfied the past due amounts.

72.     Debtor Summit currently owes THG for outstanding fees, expenses, and costs.

## COUNT ONE

### (15 U.S.C. § 1114(1) - Infringement of Federally Registered Marks)

73.     THG realleges the preceding paragraphs of this Complaint.

74.     THG is the current registered owner of the K-BOB'S STEAKHOUSE® Marks and has the right to protect the registered K-BOB'S STEAKHOUSE® Marks as well as the goods, services, and business associated with those K-BOB'S STEAKHOUSE® Marks, including the right to grant franchisees the use of the K-BOB'S STEAKHOUSE® Marks.

/ / /

75. Since registration of the K-BOB'S STEAKHOUSE® Marks, THG, KBUSA, and their franchisees have extensively advertised the K-BOB'S STEAKHOUSE® Marks in connection with their products and services.

76. Debtor Summit's right to use the K-BOB'S STEAKHOUSE® Marks ceased on November 19, 2010, when the License Agreements were terminated.

77. KB's Star Holdings and Star Texas have never had any right to use the K-BOB'S STEAKHOUSE® Marks.

78. Notwithstanding the termination of the License Agreements on November 19, 2010, Debtor Summit continues to use and display the K-BOB'S STEAKHOUSE® Marks at the Licensed Premises in connection with the sale, offering for sale, and advertising of Debtor Summit's goods and services, and in connection with such use, is causing and is likely to cause confusion, to cause mistake, or to deceive actual and/or prospective customers.

79. Debtor Summit's continued use and display of the registered K-BOB'S STEAKHOUSE® Marks for its own benefit, especially in light of the numerous notices and communications THG has sent regarding the obligation to cease all use of K-BOB'S STEAKHOUSE® Marks, constitutes willful, intentional and bad faith infringement of the K-BOB'S STEAKHOUSE® Marks in violation of 15 U.S.C. § 1114(1) .

80. Debtor Summit's infringing actions are causing and are likely to cause THG, the K-BOB'S STEAKHOUSE® Marks, the K-BOB'S STEAKHOUSE® System, and the public irreparable harm because Debtor Summit's activities are causing confusion or are likely to cause confusion, or to cause mistake, or to deceive purchasers and others.

81. THG has no adequate remedy at law to protect its substantial business and property rights.

82. THG is entitled to preliminary and permanent injunctive relief preventing the infringement of the K-BOB'S STEAKHOUSE® Marks.

83. Because Debtor Summit's actions are intentional, THG is also entitled to recover treble damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

/ / /

## COUNT TWO

### (False Designation of Origin - 15 U.S.C. § 1125(a) )

84. THG realleges the preceding paragraphs of this Complaint.

85. Debtor Summit's unauthorized use of the K-BOB'S STEAKHOUSE® Marks are likely to cause confusion, to cause mistake, or to deceive the consuming public as to the origin, sponsorship, or approval of Debtor Summit's products and services by THG.

86. Debtor Summit's acts constitute false designation of origin, source, or sponsorship and false or misleading descriptions and representations in violation of section 43 of the Lanham Act (15 U.S.C. § 1125(a) ). Such acts were knowing, willful, and intentional.

87. Debtor Summit's unlawful acts have caused and continue to cause THG to suffer damages in an amount to be proven at trial. Debtor Summit's unlawful acts have caused and continue to cause THG irreparable injury to its business reputation, goodwill, and to the integrity of the K-BOB'S STEAKHOUSE® Marks.

88. THG's remedies at law cannot adequately compensate it for the ongoing injuries threatened by Debtor Summit's continuing conduct. Unless Debtor Summit's are restrained and enjoined, they will continue to commit unlawful acts, causing THG to suffer further irreparable injury.

89. Because Debtor Summit's infringement is intentional, THG is entitled to treble damages and reasonable attorneys' fees under 15 U.S.C. § 1117 .

## COUNT THREE

### (Violation of New Mexico Uniform Trade Secrets Act)

90. THG realleges the preceding paragraphs of this Complaint.

91. As a K-BOB'S STEAKHOUSE® franchisee, Debtor Summit has had access to and/or used THG confidential and proprietary information, including, but not limited to, the System, the Manuals, and operating procedures (collectively "Trade Secrets").

92. The Trade Secrets have derived and continue to derive independent economic value, both actual and potential, from not being generally known to the public or to other persons who can obtain economic value from their disclosure or use.

93.     The Trade Secrets have been subject to reasonable efforts by THG to maintain their secrecy, including but not limited to, requiring Debtor Summit to agree to confidentiality and non-competition provisions (both in-term and post-term).

94.     Debtor Summit is using such proprietary business information in violation of its duties under the License Agreements to further its own purposes, including competing unfairly against THG.

95.     Among other things, Debtor Summit has used, and is continuing to use, the Trade Secrets to operate the Licensed Locations that are identical to K-BOB'S STEAKHOUSE® restaurants and to thereby solicit current and former customers of K-BOB'S STEAKHOUSE®.

96.     Debtor Summit knew or had reason to know that it owed a duty to THG to maintain the confidentiality and limit the use of this proprietary information.

97.     To the extent that KB's Star Holdings or Star Texas are operating the Licensed Locations, they are also improperly using the K-BOB'S STEAKHOUSE® Trade Secrets. Based on their knowledge of the relationships between Plaintiffs and Debtor Summit, as well as the terms of the License Agreements, KB's Star Holdings and Star Texas had reason to know that Debtor Summit owed a duty to maintain the confidentiality and limit the use of this proprietary information, and that allowing KB's Star Holdings and Star Texas to use it was unlawful.

98.     The Defendants are willfully misusing THG's proprietary information and K-BOB'S STEAKHOUSE® Marks in continuing to operate, without authority, the Licensed Locations as competing businesses.

99.     THG has suffered, and will continue to suffer, damages as a result of Debtor Summit's misappropriation of its proprietary information.

100.    As a direct and proximate result of the Defendants' continuing use of THG's Trade Secrets in violation of the New Mexico Uniform Trade Secrets Act, N.M. Stat. § 57-3A *et seq.*, and absent injunctive relief, THG will continue to suffer irreparable harm, for which there is no adequate remedy at law.

101.    Because the misappropriation is willful and malicious, THG seeks exemplary damages pursuant to N.M. Stat. § 57-3A-5.

## COUNT FOUR

### (Breach of License Agreement)

102.    THG realleges the preceding paragraphs of this Complaint.

103.    Each License Agreement is a valid contract supported by good and valuable consideration and fully enforceable between the parties.

104.    THG has performed and complied with its obligations as outlined in the License Agreements.

105.    Pursuant to Section 13 of the License Agreements, Debtor Summit agreed to immediately comply with the following obligations upon the termination or expiration of the License Agreements by:

    a.   ceasing operation of the Licensed Location;

    b.   refraining from holding itself out as a present or former K-BOB'S STEAKHOUSE® franchisee;

    c.   discontinuing all use of the K-BOB'S STEAKHOUSE® Marks and System;

    d.   paying THG for all past due amounts owed to THG;

    e.   delivering to THG all copies of the Manuals, records, files, instructions, correspondence, all materials related to operating the Licensed Locations, including, without limitation, brochures, agreements, invoices, and any and all other materials relating to the operation of the Licensed Locations; and

    f.   discontinuing use of all telephone listings and numbers used by the Licensed Locations and must take action to assign such listings to THG.

106.    Due to Debtor Summit's failure to cure its defaults, THG terminated the License Agreements on November 19, 2010.

107.    THG has made a demand upon Debtor Summit to comply with the post-termination obligations as set forth in the License Agreements, but Debtor Summit has failed and refused to do so, thereby materially breaching the post- termination obligations and causing

harm to THG.

108.    As a direct and proximate result of the breaches, THG has been harmed and suffered a loss in an amount to be determined at trial.

### Injunctive Relief

109.    THG does not have an adequate remedy at law for the ongoing misconduct of Defendants as set forth above.  The harm to THG from the continuing misconduct far outweighs any harm to Defendants if it they are forced to stop their misconduct, and the public interest is protected by requiring that Debtor Summit lives up to its promises and contractual obligations. Accordingly, THG is entitled to the requested injunctive relief.

### Specific Performance

110.    THG is entitled to specific performance of Debtor Summit's post-termination obligations as delineated in the License Agreements, including Debtor Summit's de-identification of the Licensed Premises, payment of the past due fees and liquidated damages amounts, and the return of the proprietary materials.

### Attorneys' Fees

111.    THG is entitled to an award of attorneys' fees under the statutory authority identified above, A.R.S. § 12-341.01(A), N.M. Stat. § 57-3A-5, and any other applicable statute.

### COUNT FIVE

### (Breach of Leases)

112.    FWD realleges the preceding paragraphs of this Complaint.

113.    Each Lease is a valid contract supported by good and valuable consideration and fully enforceable between the parties.

114.    FWD has performed and complied with its obligations as outlined in the Leases.

115.    Pursuant to Section 31 of the Leases, Debtor Summit agreed to immediately comply with certain obligations upon the termination or expiration of the Leases by surrendering the Leased Premises in good condition and repair, and surrendering all keys for the Leased Premises.  See Exhibits "B-1" to "B-3" at ¶ 31.

/ / /

116.     Debtor Summit has committed material breaches of the Leases, and accordingly, has caused the Leases to be terminated.

117.     KB's Star Holdings and Star Texas have never had any rights under the Leases.

118.     To the extent that KB's Star Holdings or Star Texas are operating the Leased Premises, they are also improperly continuing to operate under the Leases.  Based on their knowledge of the relationships between Plaintiffs and the Debtors, as well as the terms of the Leases, KB's Star Holdings and Star Texas had reason to know that Debtor Summit owed a duty to operate under the terms of the Leases.

119.     FWD has made a demand upon Debtor Summit to comply with the post-termination obligations as set forth in the Leases, but Debtor Summit has failed and refused to do so, thereby materially breaching the post-termination obligations and causing harm to FWD.

120.     As a direct and proximate result of the breaches, FWD has been harmed and suffered a loss in an amount to be determined at trial.

**Injunctive Relief**

121.     FWD does not have an adequate remedy at law for the ongoing misconduct of the Defendants as set forth above.  The harm to FWD from the continuing misconduct far outweighs any harm to the Defendants if they are forced to stop their misconduct, and the public interest is protected by requiring that Debtor Summit lives up to its promises and contractual obligations.  Accordingly, FWD is entitled to the requested injunctive relief.

**Specific Performance**

122.     FWD is entitled to specific performance of Debtor Summit's post-termination obligations as delineated in the Leases, including Debtor Summit's surrender of the Leased Premises, payment of fees and liquidated damages amounts, and the return of proprietary materials.

**Attorneys' Fees**

123.     FWD is entitled to an award of attorneys' fees under the statutory authority identified above, A.R.S. § 12-341.01(A), N.M. Stat. § 57-3A-5, and any other applicable statute. The Leases also entitle FWD to an award of attorneys' fees and costs.

1   **WHEREFORE**, Plaintiffs request the following:

2   (1)     A preliminary injunction and permanent injunction against the Defendants, their

3   agents, and all others in active concert or participation with them as follows: (i) preventing use

4   of THG's K-BOB'S STEAKHOUSE® Marks or any other mark deceptively similar to THG's

5   K-BOB'S STEAKHOUSE® Marks; and (b) enforcing all post-termination obligations under

6   the License Agreements and Leases.

7   (2)     An order specifically enforcing the terms of the License Agreements and Leases,

8   and entering judgment in favor of Plaintiffs and against Defendants for the amounts owed under

9   these agreements.

10  (3)     Awarding Plaintiffs their actual damages associated with Debtor Summit's

11  breaches of the License Agreements, including any applicable special damages.

12  (4)     Awarding attorneys' fees and costs to Plaintiffs.

13  (5)     Awarding Plaintiffs all pre-judgment and post-judgment interest as provided by

14  law and allowed under the terms of the License Agreements and Leases.

15  (6)     Such other relief as the Court may deem just or proper.

16  DATED: January 12, 2012.

17  **ALLEN, SALA & BAYNE, PLC**

18

19  /s/ *MAJ #27311*
    Thomas H. Allen
    Michael A. Jones
20  1850 N. Central Ave., Suite 1150
    Phoenix, AZ 85004
21  Attorneys for Tinsley Hospitality Group, LLC,
    Edward R. Tinsley, III, Flying W. Diamond Ranch,
22  Inc., K-Bob's U.S.A., Inc. and K-Bob's Capital
    Resource Group, LTD

23

24

25

26

27

28

-18-